SAMUEL TYSON, ADMINISTRATOR, v. THE EASTERN CAROLINA RAILWAY COMPANY.

(Filed 5 November, 1914.)

Railroads — Negligence — Persons on Track—Helpless Condition—Outlook Ahead—Insufficient Headlight—Trials—Evidence.

The plaintiff's intestate was killed at dusk on the defendant's railroad track. There was evidence tending to show that he had been seen drinking and staggering some fifteen minutes before the occurrence, and that while on his way home he came upon the defendant's roadway and sat upon the end of a cross-tie, and while sitting there with his head and body leaning forward upon his knees, the defendant's train came upon him, using a poor quality of oil for its headlight, striking his body in the region of the ribs, and causing his death; that the track was straight and unobstructed for a mile at this place, which was up-grade, that a person sitting upon the track could have been seen for 300 yards, and that by applying the brakes the train could have been stopped in 50 yards. Upon a motion to nonsuit, it is *Held,* that contributory negligence being admitted, the evidence was sufficient to be submitted to the jury upon the issue of the last clear chance as to whether the engineer could have seen the intestate sitting upon the cross-tie, if the headlight had been a proper one, or by a diligent outlook ahead he could have done so in time to have avoided killing him. *Holder v. R. R.,* 160 N. C., 7; *Stout v. R. R.,* 164 N. C., cited and distinguished.

APPEAL by defendant from *Daniels, J.,* at February Term, 1914, of GREENE.

Civil action, tried upon these issues:

1. Was the plaintiff's intestate injured by reason of the negligence of the defendant? Answer: Yes.

2. Did the plaintiff's intestate by his own negligence contribute to his own injury and death? Answer: Yes.

3. Notwithstanding the negligence of the plaintiff's intestate, could the defendant by the exercise of reasonable care have avoided the injury to the plaintiff's intestate? Answer: Yes.

4. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: $500.

*G. V. Cowper and J. Paul Frizzelle for plaintiff.*
*John L. Bridgers for defendant.*

BROWN, J. The defendant in apt time moved to nonsuit, which motion was overruled. This brings up for review the sufficiency of the evidence. It is well settled that it must be construed and accepted in the light most favorable for the plaintiff. The testimony tends to prove that the intestate of the plaintiff was killed by the defendant's train on its track on 7 August, 1911; that at the time he was 57 years old, in good health, and that his capacity and ability for work was good; there were four members of his family, whom he helped to support, and he had an earning capacity of $300 to $400 per year.

The evidence tends to prove that his body was broken up and that the blow that killed him was one on the side of his body in the region of the ribs; that at the point where he was killed the railroad was straight and clear of all obstruction for more than a mile in each direction, and that a man upon the track could have been seen at the time the intestate was killed 300 or 400 yards easily from either direction; that he was killed on an up grade, and that the train could have been stopped, if the brakes had been applied, within a distance of 50 yards.

The testimony tends further to prove that the intestate was in a store at Maury fifteen minutes before he was killed; that he was drinking and staggered; that on leaving the store he went in the direction of his home; that on reaching the railroad track he seated himself on the end of a cross-tie; that at the time when the defendant's engine approached him, both the head and body of the intestate were bent over and rested upon his knees. At the time, the testimony tends to prove that the engine had a very poor oil headlight.

It is useless to consider any matters relating to the first and second issues, because it is admitted that the intestate was guilty of contributory negligence, and, therefore, his administrator should not be permitted to recover unless there is sufficient evidence to support the finding of the jury upon the third issue, to the effect that, notwithstanding the negligence of the intestate, the defendant's engineer, by the exercise of ordinary care, could have avoided the injury. *McAdoo v. R. R.,* 105 N. C., 140; *Abernethy v. R. R.,* 164 N. C., 93.

The principle of law governing this case is well stated by *Mr. Justice Allen* in *Holder v. R. R.,* 160 N. C., p. 7, to which we give our full

approval: "As no presumption of negligence arises from the killing of the deceased, and as the engineer had the right to presume up to the last minute he would get off the cross-tie, if he was sitting up, the burden was on the plaintiff to prove that his appearance while on the cross-tie was such as to lead a man of ordinary prudence in charge of a train to believe he was unconscious or helpless, and we find nothing in the evidence that amounts to more than conjecture or speculation as to this fact."

This case differs materially from the *Holder case* in that in this case we have the positive evidence that the deceased, immediately before he was killed, was huddled up and bent over with his head and body on his knees, sitting on the end of a cross-tie, in such condition that must have indicated to a watchful engineer that he was practically helpless.

In a similar case the Supreme Court of Kentucky said: "We do not think, as a principle of law, it can be stated that where a trespasser is seen sitting upon the track with his head in his hands and his hands resting on his knees, apparently asleep or unconscious, the presumption is that he will hear and obey signals of the engineer, warning him of the approach of the train. This undoubtedly would be true if the trespasser were walking or standing on the track. In that case the very fact that he was moving, or standing up, would indicate that he was not asleep or unconscious, but had possession of his faculties, and the engineer would have the right to suppose that he would hear and obey the danger signals. But the same would not necessarily prevail where the situation is as detailed in this case. A man seated on a cross-tie of a railroad track, apparently asleep or unconscious, presents an unusual, not to say extraordinary, spectacle, and we think it was the province of the jury to determine whether or not an engineer of ordinary prudence, seeing a man so seated, ought not to commence checking the train in time to prevent injuring him, if it should transpire that he was unconscious or asleep." *Starrett v. R. R.,* 110 S. W. Rep., 283, quoted in *Smith v. R. R.,* 162 N. C., p. 35.

There was no evidence in the *Holder case* that the position of the body during life was as described by the witness in this case. There is no evidence in that case that the head and body were bent over on the knees at the time the man was injured.

*Mr. Justice Allen* says: "The circumstance that the head was bent over at the time the body was found, chiefly relied on by the plaintiff, is explained by the strong probability that a blow causing death could not have been received without making some change in the position of the body, and when death ensued it was natural for the head to drop."

There is evidence in this case that the engineer, by keeping a watchful lookout, with a good headlight, could have seen the intestate in the posi-

tion described by the witnesses, and, going up grade, could have stopped his train within 50 yards. There is evidence that he had a very poor oil headlight, and that it was about dusk at the time when his train killed the intestate.

Taking all of these facts together, we think there is sufficient evidence to have gone to the jury for their consideration to the effect that if the engine had been properly equipped with a proper headlight, and the engineer had kept a diligent lookout ahead of him, he could have discovered, by reasonable care, the condition of the intestate and could have stopped his train in time to have saved his life.

The case of *Stout v. R. R.,* 164 N. C., p. 384, is relied upon by the defendant. We must admit that the syllabus of that case is apparently an authority for the defendant's position, but an examination of the original record shows quite a distinction between the two cases.

In the *Stout case* the evidence of the witnesses shows that he was sitting on the cross-tie with his elbows on his knees, and his head bent. A double-header freight train came along and the engineer evidently discovered the position of the deceased, for the train blew repeatedly and there was evidence tending to prove that it could not have been stopped in time to save the life of the deceased. The Court was of opinion, upon an analysis of the evidence, that it fell within the principle laid down in the *Holder case.*

We think the case at bar differs materially from both.

No error.